OPINION
{¶ 1} Christopher, Ryan, Trisha, William, and Charlene McGuire ("appellants") appeal the judgment of the Trumbull County Court of Common Pleas granting Jeanine Bofenramp, d.b.a. Vienna Tree Farm ("appellee") summary judgment.
 {¶ 2} On December 10, 2000, appellants traveled to Vienna Tree Farm to select a Christmas tree. After cutting their tree, appellants Christopher, Ryan, Trisha, and William McGuire decided to go on a horse drawn wagon ride. Appellant Charlene McGuire sat and watched as the remaining appellants boarded the wagon. The wagon was driven by Richard Jewett and drawn by two horses. While circling the farm property, the wagon stopped to unload some passengers and continued onto an access road which led to the office of the business.
 {¶ 3} Near the office, the wagon approached a decline approximately 10-12 feet in length, the horses gained speed and entered a full gallop. For reasons unclear, the horses abruptly turned and, owing to their speed, the wagon tipped. During the frenzy, the wagon struck several parked cars ejecting all four appellants with the driver. The horses, with the wagon, continued out of control, until, according to appellants, they struck the "Christmas tree inventory" and became lodged between a group of large trees.
 {¶ 4} On December 10, 2002, appellants filed their complaint against appellee as well as defendants Richard and Nadine Jewett. On April 16, 2003, defendants Richard and Nadine Jewett filed a motion for summary judgment which was unopposed by appellants. On December 19, 2003, the trial court granted the Jewetts' motion for summary judgment; appellants did not appeal this judgment. On January 16, 2004, appellee filed her motion for summary judgment. Appellants filed their motion in opposition of summary judgment on February 2, 2004. On February 10, 2004, the trial court awarded summary judgment in appellee's favor. Appellants now appeal.
 {¶ 5} Before embarking upon our substantive analysis, we must mention that App.R. 16(A)(3) requires an appealing party to include "[a] statement of the assignments of error presented for review * * *." (Emphasis added). App.R. 16(A)(4) requires "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates." (Emphasis added).[1] Appellants set forth four "issues" for our review without formally assigning any error or errors for our consideration; while we disfavor and discourage appellants' procedure, we shall interpret appellants four "issues" as four assignments of error. However, in the future, we exhort appellants to comply with both the general appellate rules as well as the local rules.
 {¶ 6} That said, appellants assign the following errors for our review:
 {¶ 7} "[1.] The trial court erred in granting summary judgment as a matter of law under the basis of immunity statute [R.C.] 2305.321 since the wagon which did not have a breaking [sic] system was defective within the scope of R.C. 4513.20 et seq.
 {¶ 8} "[2.] The trial court erred in granting summary judgment as a mater of law when the wagon which did not have a braking system, did not comply with R.C. 4513.20 et seq.
 {¶ 9} "[3.] The trial court erred when it granted summary judgment when the defendant failed to warn of the existence of the immunity statute and/or the existence of a wagon without brakes.
 {¶ 10} "[4.] The trial court erred in granting immunity pursuant to R.C. 2305.321 when the ordinary meaning of the statute was not given, and the trial court expanded immunity beyond the strict construction of the statute."
 {¶ 11} Summary judgment is a procedural device which stops litigation, prior to trial, for lack of material triable issues.[2] Accordingly, summary judgment must be awarded with circumspection resolving all doubts in favor of the nonmoving party.[3] A court may grant a moving party summary judgment after he or she has demonstrated (1) there is no genuine issue of material fact; (2) that he or she is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.[4]
 {¶ 12} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party."[5]
 {¶ 13} A reviewing court conducts a de novo review of the trial court's decision granting summary judgment.[6]
 {¶ 14} As appellants' first and second assignments of error functionally reflect one another, we shall address them in tandem. Appellants contend that summary judgment was improper because the horse-drawn wagon was unequipped with brakes as required by R.C. 4513.20. R.C. 2305.321 affords general immunity to those engaged in "equine activities." However, this immunity is limited by certain exceptions set forth under R.C.2305.321(B)(2). Under R.C. 2305.321(B)(2)(a) the general immunity evaporates where "[a]n equine activity sponsor * * * provides to an equine activity participant faulty or defective equipment * * * and knows or should know that the equipment * * * is faulty or defective, and the fault or defect in the equipment * * * proximately causes the harm involved." In appellants' estimation, the lack of a braking system on the wagon creates an issue of material fact as to whether the wagon was "defective" and/or "faulty" pursuant to R.C. 2305.321(B)(2)(a).
 {¶ 15} We shall first set forth the relevant law as it pertains to immunity for equine activity risks. R.C.2305.321(B)(1) states:
 {¶ 16} "[A]n equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil action for harm that an equine activity participant allegedly sustains during an equine activity that results from an inherent risk of an equine activity."
 {¶ 17} An "equine activity" includes equine "pulling" and/or "riding."[7] Further, a party is an "equine activity participant" if he or she is "[r]iding * * * in any manner an equine, whether the equine is mounted or unmounted[.]"[8]
Finally, an "equine activity sponsor" includes "[a] person who, for profit or not for profit, sponsors, organizes, or provides a facility for an equine activity, * * *."[9]
 {¶ 18} Here, appellee was an equine activity sponsor as she provided a facility for equine activity, i.e., equine pulling or riding. Moreover, equine activity participants (appellants) were harmed during the equine activity. Appellee also properly attached an affidavit to her motion for summary judgment, authored by Richard Jewett, asserting that the harm resulted from the horses becoming "spooked," i.e., an "inherent risk of an equine activity."[10] Accordingly, appellee is entitled to the general immunity afforded under R.C. 2305.321(B)(1).
 {¶ 19} Appellants argue that they alleged a valid and viable exception to appellee's immunity and therefore set forth adequate facts to overcome summary judgment. Specifically, pursuant to R.C. 2305.321(B)(2)(a), the immunity enjoyed by an equine activity sponsor is forfeited if she:
 {¶ 20} "* * * provides to an equine activity participant faulty or defective equipment or tack and knows or should know that the equipment or tack is faulty or defective, and the fault or defect in the equipment or tack proximately causes the harm involved."
 {¶ 21} Appellants contend that because the wagon had no braking mechanism reasonable minds could construe it as "defective equipment."
 {¶ 22} R.C. 4513.20(A) provides, in relevant part:
 {¶ 23} "(A) The following requirements govern as to brake equipment on vehicles:
 {¶ 24} "* * *
 {¶ 25} "(6) Every vehicle and combination of vehicles, * * * shall be equipped with parking brakes adequate to hold the vehicle on any grade on which it is operated, under all conditions of loading, on a surface free from snow, ice, or loose material. The parking brakes shall be capable of being applied in conformance with the foregoing requirements by the driver's muscular effort or by spring action or by equivalent means. * * *." (Emphasis added).
 {¶ 26} R.C. 4511.01(A) defines the term "vehicle" and provides in pertinent part:
 {¶ 27} "* * * every device, including a motorized bicycle, in, upon, or by which any person or property may be transported or drawn upon a highway, * * *." (Emphasis added).
 {¶ 28} R.C. 4511.01(BB) sets forth the following meaning of "street" or "highway:"
 {¶ 29} "* * * the entire width between the boundary lines of every way open to the use of the public as a thoroughfare forpurposes of vehicular travel." (emphasis added)
 {¶ 30} With these definitions in mind, we believe there is an issue of material fact as to whether the horse-drawn wagon in question was a vehicle as defined by statute. Specifically, the record generally indicates the wagon was being drawn by horses on private property suggesting the path over which the wagon was pulled was not a highway as the statute so defines; however, according to an affidavit attached to appellants' motion for summary judgment, "[d]uring the ride, the wagon was on the roadwhich led to the Vienna Tree Farm." (Emphasis added). The record does not indicate the precise nature of the "road" on which the wagon traveled, i.e., the pleadings, motions, and affidavits fail to specifically state whether the "road" in question is actually "open to the use of the public as a thoroughfare for purposes of vehicular travel."[11] If the "road" is a highway, the wagon is a vehicle and must have brakes; if the "road" does not fall within the definition of a highway, the wagon is not a vehicle and no brakes are required. Accordingly, there is a genuine issue of material fact as to whether the wagon is a vehicle; in particular, the inquiry hinges upon whether the wagon was traveling on a "highway" as set forth by statute.
 {¶ 31} Because there is a genuine issue of material fact as to whether the wagon is a vehicle as defined in the statute, the issue of whether the wagon was "defective" pursuant to R.C.2305.321(B)(2)(a), supra, cannot be determined at this point. For this limited reason, appellants' first and second issues submitted for review have merit.
 {¶ 32} Appellants' third assignment of error asserts summary judgment was improper because appellee failed to warn appellants of the existence of the equine activity immunity statute as well as the fact that the wagon had no brakes.
 {¶ 33} First, appellants fail to set forth any argument as to why appellee would be legally obligated to warn them of the existence of the equine activity immunity statute. Further, there is no record evidence that appellee made an express or implied warranty as to the safety of the wagon, the wagon ride, or the horses themselves. Without some formal or functional warranty, we cannot conclude appellee breached any duty to inform appellants about the known dangerous proclivities of the wagon, the wagon ride, or the horses themselves.[12]
 {¶ 34} Furthermore, R.C. 2305.321(B)(1) states:
 {¶ 35} "* * * an equine activity participant * * * does not have a claim or cause of action upon which a recovery of damages may be based against, and may not recover damages in a tort or other civil action against, an equine activity sponsor, * * * for harm that the equine activity participant allegedly sustained during an equine activity and that resulted from an inherentrisk of an equine activity." (Emphasis added).
 {¶ 36} The statute notes that certain risks are inherent to equine activities. An inherent risk is one which inheres or belongs by nature to the object or activity it predicates. By using the term "inherent" to classify the type of risks involved in equine activities, it seems the legislature was acknowledging that equine activities involve evident risks that cannot be ignored by equine activity participants. If the risks are evident, they need not be overtly disclosed by an equine activity sponsor or expressly waived by an equine activity participant. Hence, by virtue of its language, we do not believe the statute imposes a duty upon an equine activity sponsor to specifically warn an equine activity participant of the dangers or foreseeable harm of engaging in an equine activity.
 {¶ 37} Appellants next argue that appellee had a duty to warn appellants that the wagon had no brakes. In support appellants cite R.C. 2305.321(B)(2)(c), which lifts immunity for equine activities where:
 {¶ 38} "The harm involved is proximately caused by a dangerous latent condition of the land on which or the premisesat which the harm occurs, an equine activity sponsor * * * owns, leases, rents, or otherwise lawfully posseses and controls the land or premises and knows or should know of the dangerous latent condition, but does not post conspicuously prior to the time of the harm involved one or more signs that warn of the dangerous latent condition." (emphasis added)
 {¶ 39} This statutory subsection functions to lift immunity for dangerous latent conditions of the land on which the equine activity and harm occur where the equine activity sponsor (inter alia) know or should have known of the condition and does not warn of the condition. The statute does not require the equine activity sponsor to warn of dangerous latent conditions of equipment used in equine activities; rather, as already discussed, R.C. 2305.321(B)(2)(a) addresses defective or faulty equipment of which the equine activity sponsor (inter alia) are or should be aware. Appellants' argument does not fall within the scope of R.C. 2305.321(B)(2)(c); hence, appellants' third issue submitted for review is without merit.
 {¶ 40} Finally, in their fourth assignment of error, appellants allege the trial court failed to strictly construe R.C. 2305.321 according to its plain, common, and ordinary meaning. Appellants' argument is vague and ostensibly designed to act as a "safety net" to catch any and all contentions not specifically asserted but which might lend to a forfeiture of appellee's equine activity immunity. While we agree that the language of all statutes should be given their plain and ordinary meaning, appellant does not indicate, with any particularity, how the trial court was derelict in its duty to so read R.C.2305.321. Appellants simply argue they were not equine activity participants and thus, their injuries fall outside the equine activity immunity statute. We disagree. As noted above, a party is an "equine activity participant" if he or she is "[r]iding * * * in any manner an equine, whether the equine is mounted or unmounted[.]"[13] Here, appellants were participating in an equine drawn wagon ride (i.e., unmounted ride) when the harm occurred.
 {¶ 41} Appellants also cite each exception to immunity and contend the exceptions place a duty to inspect and warn on appellee. We believe the substance of these contentions have been addressed supra; hence, any further review of these issues would be redundant. That said, appellants fail to substantiate their conclusions with any justification. App.R. 16(A)(7) requires an appellant to provide "an argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." Here, appellants offer their conclusions but no reasons to support their contentions. Accordingly, we decline to address this issue. Appellants' final issue submitted for review is overruled.
 {¶ 42} Appellants' first and second issues submitted for review are sustained; however, appellants' third and fourth issues submitted for review are overruled. Thus, the decision of the Trumbull County Court of Common Pleas is hereby reversed and remanded for proceedings consistent with the foregoing opinion.
O'Toole, J., concurs, O'Neill, J., concurs in judgment only.
[1] See, also Loc.R.12(C)(1).
[2] Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-359, 1992-Ohio-95.
[3] Id.
[4] See, e.g., Convenient Food Mart, Inc. v. Atwell PropertiesLtd., 11th Dist. No. 2003-L-174, 2005-Ohio-704, at ¶ 19.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107.
[6] Hapgood v. Conrad (June 28, 2002), 11th Dist. No. 2000-T-0058, 2002 WL 1400583, ¶ 13.
[7] R.C. 2305.321(A)(2)(a)(i) and (vi).
[8] R.C. 2305.321(A)(3)(a).
[9] R.C. 2305.321(A)(4)(a).
[10] R.C. 2305.321(B)(1).
[11] R.C. 4511.01 (BB).
[12] See, Hall v. Klien (Sept. 3, 1999), 6th Dist. No. WD-99-001, 1999 Ohio App. LEXIS 4058, at 11-12.
[13] R.C. 2305.321(A)(3)(a).